1  GREENBERG TRAURIG, LLP
2  MATHEW S. ROSENGART (SBN 255750)
   MATTHEW R. GERSHMAN (SBN 253031)
3  1840 Century Park East, Suite 1900
   Los Angeles, CA 90067-2121
4  rosengartm@gtlaw.com
5  gershmanm@gtlaw.com
   Telephone:  310-586-7700
6  Facsimile:   310-586-7800

7  Attorneys for Petitioner,
8  RAVEN ASSET-BASED OPPORTUNITY FUND II LP

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAVEN ASSET-BASED OPPORTUNITY FUND II LP,<br><br>Petitioner,<br><br>v.<br><br>GREEN-LIGHT INTERNATIONAL, LLC,<br><br>Respondent. | CASE NO. 2:16-cv-05358-R-GJS<br><br>**FIRST AMENDED PETITION TO CONFIRM JAMS ARBITRATION AWARDS**<br><br>Action filed: July 19, 2016<br>Judge: Hon. Manuel L. Real |

---

AMENDED PETITION TO CONFIRM ARBITRATION AWARDS

Petitioner Raven Asset-Based Opportunity Fund II LP ("Fund II") brings this Summary Proceeding and applies under the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, to confirm arbitration Awards issued by Judicial Arbitration and Mediation Services ("JAMS"), through its duly-appointed neutral arbitrator, Hon. Rosalyn Chapman (Ret.), against Respondent Green-Light International, LLC ("Respondent").

This Amended Petition concerns two governing JAMS arbitration Awards against Respondent. Petitioner Fund II's original Petition (ECF No. 1) sought confirmation of Judge Chapman's June 2, 2016 Partial Final Award Granting Preliminary Injunction (the "June 2 Award"). Subsequent to Fund II's filing its original Petition, on August 12, 2016, Judge Chapman issued an additional arbitration Award as a result of Respondent's "severe" misconduct—a Partial Final Award re: Sanctions (the "August 12 Award").

Thus, Fund II brings this Amended Petition to address that development and seek confirmation of the August 12 Award in addition to the June 2 Award (collectively, the "the Awards"). A true and correct copy of the June 2 Award is attached hereto as Exhibit A, and a true and correct copy of the August 12 Award is attached hereto as Exhibit B.

Fund II respectfully submits that this Petition should be granted, and the Awards confirmed, because—as demonstrated herein and in the Awards themselves—the arbitration proceeding was in all respects proper, and the Awards are binding.

## PARTIES

1.   Petitioner Fund II is a Delaware limited partnership engaged in, among other things, lending, investing, and film financing. At all relevant times, its partners were citizens of New York.

2.   Respondent is a California limited liability company, which acts as a motion picture sales agent and film financier and, upon information and belief, is a California citizen, whose members are citizens of the State of California.

# SUBJECT-MATTER JURISDICTION

3. Federal subject-matter jurisdiction exists under 28 U.S.C. § 1332(a)(2), because diversity of citizenship between Petitioner and Respondent is complete and the amount in controversy exceeds $75,000, exclusive of interest and costs.

# VENUE

4. Venue is proper in this District under the Federal Arbitration Act, 9 U.S.C. § 9, because the Partial Final Awards were rendered in this District after Oral Argument and an Evidentiary Hearing, which also occurred within this District.

# FACTS

**A.  Background**

5. As set forth in the accompanying Awards, and as demonstrated before JAMS and noted below, the underlying arbitration arose from the evidently-larcenous misconduct of Respondent Green-Light International, LLC (or "GLI"), which includes GLI's misappropriation, diversion, and apparent conversion of hundreds of thousands of dollars of third-party film distributor funds to GLI's own JP Morgan Chase bank account.

6. By way of background, Fund II and Respondent are parties to an "Inter-Party Agreement" dated November 12, 2015 concerning the 2016 motion picture "URGE" starring Pierce Brosnan and Ashley Greene, which is referred to as the "IPA." (A true and correct copy of the IPA is annexed hereto as Exhibit C.)

7. The governing IPA provided for arbitration of disputes to take place in Los Angeles before JAMS. (*See* Ex. C at ¶ 10.)

8. Respondent was a motion picture/film sales agent for Petitioner with respect to selling foreign distribution rights for the motion picture URGE. (Ex. A, at 7-8.) Accordingly, it was engaged by Petitioner to "sell" (or license) the "URGE" film to foreign film distributors who would, in turn, distribute the film for exhibition in movie theatres.

9. Pursuant to the term of the IPA, as well as industry practice, GLI was required to remit funds received from foreign film distributors in connection with the

sales process (also referred to as film "receipts") to a Collection Account managed by Freeway Entertainment KFT, a well-established film collection account manager, which had been pre-approved by Respondent. (*Id.*, at 7.)

10. In 2016, Respondent solicited and obtained hundreds of thousands of dollars from various foreign film distributors in connection with licensing "URGE" for foreign distribution. However, instead of remitting those funds/receipts to the Collection Account as required by the IPA, industry practice, and law, GLI secretly and unlawfully instructed the foreign distributors to remit the funds into GLI's *own private JP Morgan Chase Account*. (*Id.*, at 8.)

11. Upon discovering that Respondent had misappropriated and diverted the distributor funds (which according to copies of wire transfer and other records obtained by Petitioner, totaled *more than $410,000*) into its own bank account instead of having those funds deposited into the Collection Account managed by a neutral third-party—as was required by the parties' contract (the IPA)—Petitioner initiated the underlying JAMS arbitration. (Ex. A.)

12. Specifically, on April 29, 2016, Petitioner commenced arbitration against Respondent before JAMS in Los Angeles. (*Id.*, at 1-3.)

13. Also on April 29, 2016, Petitioner requested that an Emergency Arbitrator be appointed—pursuant to JAMS Rule 2(c)—to address and rule on Respondents' request for emergency temporary relief, to ensure the distributor fees that Respondent had illegally misappropriated and diverted into its own bank account were not dissipated (or stolen) by Respondent during the arbitration. (*Id.*)

14. Petitioner was particularly concerned about Respondent's potential conversion of the third-party funds at issue because (i) Respondent had previously made various false representations to Petitioner (including that it would attend the 2016 Berlin Film Market/Festival to "pre-sell" the URGE film, which it admittedly failed to do); (ii) Respondent was a brand-new, fledgling company with no track record; and (iii) Respondent's misconduct occurred on the eve of the 2016 Cannes Film Festival, during

3
AMENDED PETITION TO CONFIRM ARBITRATION AWARDS

which Petitioner's new sales agent (hired by Petitioner after it terminated Respondent) hoped to make new foreign "pre-sales" of the films.

15.  Pursuant to JAMS Rules, Judge Rosalyn Chapman—a retired federal jurist (former United States Magistrate Judge) and Judge for the United Nations Appeals Tribunal—was duly appointed as Arbitrator on or about May 2, 2016.  All disclosures and appointment procedures were followed, Respondent accepted and asserted no objections to Judge Chapman serving as the Arbitrator, and Respondent actively participated in all arbitration proceedings.  (*See* Ex. A.)

16.  On May 10, 2016, a Hearing was held at which counsel for all parties appeared and presented oral argument.

**B.    The JAMS Arbitrator's First Award, Granting Equitable Relief**

17.  Following oral argument, Judge Chapman granted in part Petitioner's application for emergency temporary relief and ultimately issued a reasoned Interim Order and Temporary Restraining Order, true and correct copies of which are annexed hereto as Exhibits C and D, respectively.  Judge Chapman also set a hearing on an OSC regarding why a Preliminary Injunction should not issue against Respondent.  (*Id*.)

18.  After full briefing by all parties and an extensive Evidentiary Hearing held on May 26, 2016, at which counsel for all parties (as well as a representative for Respondent, Chad Moore) appeared and actively participated, Judge Chapman issued and executed on June 2, 2016 an 18-page reasoned Partial Final Award that granted the Preliminary Injunction and included detailed factual findings and a detailed analysis addressing the parties' respective arguments.  (*Id*.)

19.  Consistent with its authority under JAMS Rules (agreed to by Respondent), the June 2, 2016 Partial Final Award ordered Respondent to, among other things: (i) "immediately transfer any and all receipts and revenues from foreign distributors in connection with the motion picture Urge … to the Temporary Collection Account . . . which Freeway Entertainment KFT has established at East West Bank and which Freeway will manage," and (ii) "immediately" produce copies of "all monthly financial

statements" showing the location(s) of the Urge distributor proceeds from December 1, 2015 to present.  (Exhibit A [June 2, 2016 Partial Final Award at p. 17-18].)

20. JAMS duly served the Partial Final Award on all parties on June 3, 2016. (*Id.*, at attached June 3, 2016 Proof Of Service.)

### C. The JAMS Arbitrator's Second Award, Sanctioning Respondent for its Severe Misconduct and Flagrant Disregard of the Law and the Arbitrator's Orders

21. Subsequently, as a result of Respondent's misconduct during the arbitration and contempt for and refusal to obey the Arbitrator's TRO and Preliminary Injunction (including GLI's unlawful retention and apparent theft of several hundreds of thousands of dollars of third-party funds), Petitioner filed an Application with JAMS For Monetary Sanctions Against Respondent.  (*See, e.g.,* Claimant's Request for Sanctions Pursuant to JAMS Rule 29, a true and correct copy of which is annexed hereto as Exhibit D.)

22. On July 13, 2016, after extensive briefing and argument and after providing Respondent with ample opportunity to explain or rectify its misconduct, the Arbitrator granted Petitioner's Request for Attorneys' Fees and Sanctions, as set forth in the accompanying "ORDER GRANTING APPLICATION OF CLAIMANT RAVEN FUND II'S REQUEST FOR SANCTIONS," a true and correct copy of which is annexed hereto as Exhibit E.  In so doing, the Arbitrator ordered, among other things, that "Respondent shall pay Claimant Fund II [the Petitioner] monetary sanctions in the amount of $63,000."  (Ex. E, at 8.)[1]

23. Most recently, after even further briefing and argument, on August 12, 2016, the Arbitrator issued a further Partial Final Award that confirmed Respondent's obligation to pay the $63,000 in monetary sanctions for its "severe" misconduct and further awarded Petitioner (i) "reasonable attorney fees totaling $107,504" and (ii) "costs

---

[1] Petitioner had sought an even more severe sanction.

in the amount of $15,798." (Exhibit B [August 12, 2016 Partial Final Award re: Sanctions at p. 12].)

24.  In granting Petitioner's request for attorneys' fees over Respondent's objection, the Arbitrator (Judge Chapman), assessed the prevailing rates for "similar work performed by attorneys of comparable skill, experience and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979-80 (9th Cir. 2008) (citation omitted).

25.  Judge Chapman also "applied her evaluation of counsel's conduct before her and her lengthy experience as a judge in the greater Los Angeles area to determine the value of the professional services rendered by Claimant's [Petitioner's] attorneys. *See, e.g., PLCM Group, Inc. v. Drexler*, 22 Cal. 4th 1084, 1096 (2000) ('The experienced trial judge is the best judge of the value of professional services rendered in [her] court. . . .')." *Id.*

26.  Judge Chapman, once again, also duly considered all of the written and oral arguments asserted by Respondent's counsel, ultimately rejecting them. *Id.*

27.  Thus, the August 12 Award imposed a total of *$186,302* in sanctions against Respondent for its misconduct. (*Id.*, at 13.) Respondent has failed to pay this amount.

## ARGUMENT

28.  Section 9 of the Federal Arbitration Act provides that a party may, within one year after an arbitration award is made, apply to the Court for an Order confirming the award, and thereupon the Court must grant such an order unless the award is vacated, modified, or corrected, as prescribed in Section 10 and 11 of this title. 9 U.S.C. § 9; *see also* JAMS Rule 25 ("Proceedings to enforce, confirm, modify or vacate an Award will be controlled by and conducted in conformity with the Federal Arbitration Act, 9 U.S.C. Sec 1, *et seq.*, or applicable state law. The Parties to an Arbitration under these Rules shall be deemed to have consented that judgment upon the Award may be entered in any court having jurisdiction thereof.").

29. It is well established that "[t]he role of the courts in reviewing arbitration awards is extremely circumscribed." *Southern California Gas Co. v. Util. Workers Union of Am. Local 132, AFL-CIO*, 265 F.3d 787, 792 (9th Cir. 2001).

30. Further, "[t]he confirmation of an arbitration award is meant to be a summary proceeding." *G.C. & K.B. Investments, Inc. v. Wilson*, 326 F.3d 1096, 1105 (9th Cir. 2003). Thus, judicial confirmation of an award is mandated and must be granted "*even in the face of erroneous findings of fact or misinterpretations of the law.*" *French v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 784 F.2d 902, 906 (9th Cir. 1986) (emphasis added). "There is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exception applies." *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 587 (2008) (internal quotation omitted); *see also Bosack v. Soward*, 586 F.3d 1096, 1102 (9th Cir. 2009) ("Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award") (quoting *Kyocera Corp. v. Prudential-Bache Trade Services, Inc.*, 341 F.3d 987994 (9th Cir. 2003).)

31. There are no grounds to vacate, modify, or correct either the June 2 Award or the August 12 Award. The Awards are well within the Arbitrator's broad and effectively unreviewable authority. *See supra; see also Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 937 (9th Cir. 2013) ("[A]n arbitrator generally has the authority to enter injunctive relief against a party that has entered into an arbitration agreement."); *Pacific Reinsurance Management Corp. v .Ohio Reinsurance Corp.*, 935 F.2d 1019, 1022-23 (9th Cir. 1991) ("Temporary equitable relief in arbitration may be essential to preserve assets or enforce performance which, if not preserved or enforced, may render a final award meaningless [and] if temporary equitable relief is to have any meaning, the relief must be enforceable at the time it is granted, not after an arbitrator's final decision on the merits.").

32. For the foregoing reasons, Petitioner respectfully requests that this Court confirm the Awards (Ex's. A-B), confirming them as a Judgment (or Judgments) against Respondent by the Court under the Federal Arbitration Act.

**WHEREFORE,** in this Summary Proceeding, Petitioner respectfully applies to the Court for a Judgment against Respondent confirming the Partial Final Awards and directing entry of a Judgment:

(i) Ordering Respondent to "immediately transfer any and all receipts and revenues from foreign distributors in connection with the motion picture Urge (the Urge Distributor Proceeds), previously received or received hereafter, to the Temporary Collection Account (beneficiary name "Stichting Freeway Custody – Temporary Urge Deposits") which Freeway Entertainment KFT has established at East West Bank and which Freeway will manage."[2] (Ex. A [June 2 Award, at 17]);

(ii) Ordering Respondent to "pay Claimant Fund II sanctions in the total amount of $186,302." (Ex. B [August 12 Award, at 13]);

(iii) That Respondent is "enjoined and prohibited from accessing, spending, using, transferring, dissipating or otherwise appropriating any of the Urge Distributor Proceeds, regardless of when Respondent received or will receive such Urge Distributor Proceeds." (*Id.*);

(iv) Otherwise enforcing the relief set forth in the Awards; and

(v) Granting such other and further relief, including attorneys' fees and costs, in favor of Petitioner as the Court deems just and proper.

Dated: September 9, 2016   GREENBERG TRAURIG, LLP

By: /s/ *Matthew R. Gershman*
Attorneys for Petitioner, RAVEN ASSET-BASED OPPORTUNITY FUND II, LP

---

[2] As noted herein and in the annexed June 2 Award, that sum totals no less than $410,430, and Respondent should be ordered to transfer that sum forthwith, in accordance with the Award. (Ex. A [June 2 Award, at 9].)